1841.

King & Prime
*v.*
Sea Ins. Co.

KING and PRIME, *appellants,* and THE SEA INSURANCE COMPANY, *respondents.*

> When the names of individuals, not parties to the proceeding, are introduced into a petition or pleading in chancery, connected with scandalous and offensive matter not material or pertinent to the relief sought, on exceptions taken, the matter will be stricken out with costs: Thus, where a petition was presented to dissolve an insurance company for various violations of the provisions of the act incorporating it, and the petitioner stated an act of fraud on the part of a single subscriber in obtaining stock, implicating a third person and one of the commissioners authorized to receive subscriptions, IT WAS HELD, inasmuch as such act would not work a forfeiture of the corporation, that the matter was impertinent, and being scandalous, it was stricken out.

APPEAL from Chancery. The appellants, stockholders of the Sea Insurance Company, presented a petition to the Chancellor, under 2 *R. S.* 463, § 39, praying for an *injunction,* restraining the directors and officers of the company from disposing of its property, and for the appointment of a *receiver,* alleging various violations of the provisions of the act of incorporation. By the act of incorporation, the whole amount of the capital was required to be paid in specie, current bank bills, stocks at or above par, or *upon bond and mortgage upon unincumbered real estate of the value of thirty per cent more than the amount loaned thereon.* The petitioners stated that bonds and mortgages upon property in Broome county were taken in payment on subscription to the stock of the company, to an amount of between $34,000 and $35,000, from a certain individual, naming him; and that the *valuation* affixed to the bonds and mortgages, made by a certain other individual, also naming him, greatly exceeded the value of the property mortgaged, in many instances to more than double the amount of the property; and that several of the mortgagors were notoriously destitute of responsibility or credit; that the object of the person subscribing to the stock, and of the other persons in making

such arrangements, was to raise money by selling the stock; and that, in fact, it was assigned shortly afterwards much below par; that a fraud was thus perpetrated upon the *bona fide* holders of the stock of the company; and that all this was done with the connivance of one of the commissioners, who was also a director of the company.

1841.

King & Prime
*v.*
Sea Ins. Co.

The insurance company on leave obtained, filed exceptions to the petition for scandal and impertinence, specifying as impertinent and scandalous, the allegations in relation to the *valuation* of the bonds and mortgages, and the connivance of the individual acting as commissioner and director: which exceptions, after hearing counsel, were allowed by a master, to whom the same were referred. The petitioners filed exceptions to the master's report on the *27th September*, 1838. On the 4th day of *December*, 1838, the Chancellor delivered his opinion upon the main question of the cause granting the prayer of the petitioners, and appointing a receiver.— The exceptions to the master's report were not decided until May, 1840, when they were overruled, with costs to be paid by the petitioners, from which order of the Chancellor, the petitioners appealed to this court. The case was argued here by

*J. Blunt*, for the appellants.

*H. K. Smith*, for the respondents.

After advisement, the following opinion was delivered:

*By the* CHIEF JUSTICE. A petition in this case was presented to the Chancellor, on behalf of three of the stockholders of the Sea Insurance Company, setting out various acts of forfeiture of the charter, and praying that a receiver might be appointed, for the purpose of closing up the affairs of the company.

Exceptions were taken to several matters set forth in the petition, as irrelevant and slanderous, which were re-

1841.

King & Prime
*v.*
Sea Ins. Co.

ferred to a master, who having heard counsel on both sides, reported that they were well taken, and which report has been confirmed by the Chancellor.

The parts of the peti.ion excepted to, charged, in substance, that a fraud was committed upon the company by a combination between a subscriber for a large amount of the stock and one of the commissioners to receive the subscriptions, and an appraiser of the real estate mortgaged to secure payment thereof, giving the names of the indiviuals concerned. It was charged, that the persons giving the bonds and mortgages were insolvent, and the real estate an inadequate security.

It is too obvious to require argument, that the names of individuals, not parties to the proceedings in the case, ought not to be introduced in an offensive and discreditable manner, in the petition or pleading, unless the matters with which they are thus connected, are material and pertinent to the relief prayed for, as they' have no opportunity for explanation or vindication from the aspersions cast upon their characters. To sanction the practice, would be making legal proceedings in a court of justice vehicles for the publication of slander and calumny. Ordinarily, even where the matter set forth involving the acts and proceedings of persons not parties to the record, are relevant, it is unnecessary to designate their names; all that can be material or important to spread before the court, are the facts. But unless relevant and material, there is no apology for their introduction upon the record.

I agree with the Chancellor, that a fraud upon the company, between a single subscriber to the stock, and the appraisers of his mortgage security, and one of the commissioners, affords no ground for seeking a dissolution of the corporation, unless the directors who accepted the security were privy to the fraud. It would be most unjust to them, as well as to a majority of the stockholders who had acquired a vested interest in the stock and operations of the company. It might afford ground for arresting the

stock in the hands of the subscriber, or of any person not a *bona fide* purchaser; and also for a remedy against the persons concerned in the fraud. They would be held personally answerable to the extent of any loss that might be sustained by the company, from the inadequacy of the security: a remedy which the directors might, at once resort to, who had taken the bonds and mortgages in good faith. It might with the same plausibility, be urged as a ground for dissolving the corporation, that a subscriber had paid for his stock in bad money; or if notes had been taken for the same, payable by instalments, that the maker was insolvent, as the fraud set up here in respect to the mortgage security: grounds, I presume, never before thought of for claiming a forfeiture of the charter, but good and sufficient for claiming satisfaction from the party or parties concerned, for the loss sustained by the company.

I must say, therefore, that the substantial ends of justice did not require the severe imputations cast upon the persons named in the petition, and who have no opportunity in the course of the proceedings to vindicate themselves; and that the master and court below, have applied the proper remedy for the irregularity. Unless expunged, the charges remain as a sort of record evidence of the crime, to be pointed at as seriously detracting from the character and credit of the individuals implicated, put forth in a form too, and in a way that exempts the party making them from personal responsibility, and incapable of refutation from the nature of the proceedings in the cause. To allow them, therefore, to remain a perpetual record of the infamy of the persons implicated, where the allegations are not material, but indifferent whether true or false, as respects the merits of the case, and the parties directly proceeded against of course not concerned to refute them, would be most unjust to the individuals implicated, as well as discreditable to the administration of the law.

I shall therefore vote to affirm the decision below.

1841.

King & Prime
*v.*
Sea Ins. Co.

On the question being put, *Shall this decree be reversed?* the members of the court *unanimously* answered in the negative. Whereupon the decree of the Chancellor was AFFIRMED.